IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

                Plaintiff,

        vs.                              Cr. No. 09-3061 MV

NICHOLOUS PHILLIPS,

                Defendant.

## DEFENDANT'S OBJECTIONS TO THE PRESENTENCE REPORT

Defendant Nicholous Phillips, through counsel, objects to the conclusion in the presentence report that he is subject to the Armed Career Criminal Act ("ACCA") and in particular to the determination that his New Mexico convictions for shooting at a vehicle and aggravated assault with a firearm are for violent felonies under 18 U.S.C. § 924(e)(2)(B), ¶¶ 27, 70, 71, and to the conclusion in the presentence report that he is subject to an enhancement to an offense level of twenty-four pursuant to USSG § 2K2.1(a)(2) and in particular to the determination that his aggravated assault conviction is for a crime of violence under USSG § 4B1.2(a), ¶ 21. As grounds for these objections, Mr. Phillips states as follows.

### INTRODUCTION

Neither the offense of shooting at a vehicle under N.M. Stat. Ann. § 30-3-8(B) nor the offense of aggravated assault under N.M. Stat. Ann. § 30-3-2(A) has the requisite element of mens rea so as to qualify as a violent felony under the ACCA. Under *Begay v. United*

*States*, 553 U.S. 137 (2008), only purposeful offenses fall within the residual clause of 18 U.S.C. § 924(e)(2)(B)(ii).  A violation of § 30-3-8(B) involves shooting that is reckless—a scienter level the Tenth Circuit has held is insufficient to meet *Begay*'s purposefulness requirement.  While § 30-3-8(B) requires a wilful discharge of a firearm at a vehicle, it only requires a reckless state of mind with respect to the consequences of that act—the part of the act that would make it risky.  Mr. Phillips' conviction for shooting at a vehicle is therefore not for a violent felony.  Consequently, he does not have three convictions for violent felonies, rendering the ACCA inapplicable.

For similar reasons, Mr. Phillips' aggravated assault offense is not a violent felony under the ACCA or a crime of violence under USSG § 4B1.2(a).  One version of New Mexico aggravated assault does not have as an element awareness that the offender's actions will cause the victim apprehension that she or he will receive a battery.  Consequently, it does not constitute a deliberate, purposeful threatened use of physical force that would be necessary to constitute a violent felony under § 924(e)(2)(B)(i) or (ii) or a crime of violence under § 4B1.2(a).  However, the Tenth Circuit has held otherwise regarding whether it is a violent felony in *United States v. Silva*, 608 F.3d 663 (10th Cir. 2010).  Mr. Phillips pursues his argument with respect to his aggravated assault conviction for possible review by the Tenth Circuit en banc or the Supreme Court on certiorari.

## STATEMENT OF THE FACTS

On March 6, 2007, Mr. Phillips pleaded guilty to aggravated assault with a deadly weapon pursuant to a plea agreement.  The count of the indictment to which he pleaded guilty alleged "[t]hat on or about the 3rd day of June, 2006, in Bernailllo County, New Mexico, the above-named defendant did assault or strike at Joshua [D.], with a handgun, which was a deadly weapon, contrary to Section 30-3-2(A) and Section 31-18-16, NMSA 1978."  On the date of the guilty plea, the state district court sentenced Mr. Phillips  to four years in prison for the assault with firearm enhancement offense and a tampering with evidence offense, suspended three of those years, and ordered Mr. Phillips to serve three years of probation following the service of his one-year prison term.  (Attachment ("Att.") A).

On January 7, 2008, Mr. Phillips pleaded guilty to shooting at a motor vehicle pursuant to a plea agreement.  The count of the criminal information to which he pleaded guilty alleged: "[t]hat on or about the 31st day of March, 2006, in Colfax County, New Mexico, the above-named defendant did wilfully discharge a firearm at a motor vehicle which did not result in great bodily harm, contrary to NMSA 1978, Section 30-03-08(B), a Fourth Degree Felony."  On the date of the guilty plea, the state district court sentenced Mr. Phillips to three years in prison for the shooting offense and a felon in possession of a firearm offense, suspended those three years and imposed three years of probation.  (Att. B).

In this court, an indictment charged Mr. Phillips with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2), Count I, and possession of a firearm with an obliterated r altered serial number in violation of 18 U.S.C. § 922(k) and 924(a)(1)(B), Count II.  (Document ("Doc.") 4).  Mr. Phillips pleaded guilty to count I of the indictment pursuant to a plea agreement.  (Doc. 31 ¶ 3).  Under the agreement, the parties stipulated pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of no more than fifteen years of imprisonment is the appropriate sentence.  (Doc. 31 ¶ 5).  The parties also stipulated that Mr. Phillips is entitled to a three-offense-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a) and (b). (Doc.31 ¶ 9(a)).  The government agreed to dismiss count II of the indictment after sentencing.  (Doc. 31 ¶ 18(a)).

The probation office concluded that Mr. Phillips was subject to the ACCA on the grounds that he had three convictions for violent felonies.  Those convictions were an aggravated battery conviction for an incident in 2004 and the two convictions described above.  (PSR ¶¶ 27, 35, 36, 37, 70, 71).  In a memorandum and the presentence report itself, the probation office explained its rationale for finding the § 30-3-8(B) offense was a violent felony.  It contended that offense fits within the residual clause of § 924(e)(2)(B)(ii), i.e., it otherwise involves conduct that presents a serious potential risk of physical injury to another. It claimed that discharging a firearm in a public place is as dangerous as burglary or arson and noted the act of discharging the firearm under § 30-3-8(B) must be wilful, not reckless

4

or negligent.  The probation office disregarded that a violation of § 30-3-8(B) becomes dangerous only when the circumstances with respect to which the offender is reckless are taken into account.

The probation office also determined that, absent application of the ACCA, Mr. Phillips' base offense level would be twenty-four under USSG § 2K2.1(a)(2) on the grounds that his convictions for aggravated battery and aggravated assault were for crimes of violence as defined under USSG § 4B1.2(a).  (PSR ¶ 21).

## ARGUMENT

**I.  Mr. Phillips' violation of N.M. Stat. Ann. § 30-3-8(B) is not a violent felony under the residual clause of 18 U.S.C. § 924(e)(2)(B)(ii) because purposefulness with respect to the risky consequences of the violation is not an element of the offense.**

**A.** *The burden is on the government to prove under the categorical approach that the elements of a defendant's offense satisfy the requirements of the residual clause of 18 U.S.C. § 924(e)(2)(B)(ii).*

The ACCA increases the statutory sentencing range from zero to ten years of imprisonment to fifteen years to life for a defendant convicted of being a felon in possession of a firearm who has three prior convictions for violent felonies.  18 U.S.C. §§ 922(g), 924(a)(2) & 924(e)( 1).  The ACCA defines a violent felony as a "crime punishable by imprisonment exceeding one year" that:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B).

To determine whether an offense is a violent felony, a reviewing court must apply the categorical approach.  Under that approach, "generally . . . the trial court [may] look only to the fact of conviction and the statutory definition of the prior offense," not to the actual facts of the offense.  *Taylor v. United States*, 495 U.S. 575, 602 (1990).  Only the elements matter. *United States v. Hays*, 526 F.3d 674, 676 (10th Cir. 2008).  The Supreme Court has explained specifically with respect to the "otherwise" or residual clause of § 924(e)(2)(B)(ii) that courts "look only to the fact of conviction and the statutory definition of the prior offense, and do not generally consider the particular facts disclosed by the record of conviction.  That is, we consider whether the *elements of the offense* are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of this particular offender.  *James v. United States*, 550 U.S. 192, 202 (2007) (emphasis in original); *see also Begay v. United States*, 553 U.S. 137, 141 (2008) (observing when analyzing whether an offense satisfies the residual clause that courts "consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion"); *United States v. Sanchez-Garcia*, 501 F.3d 1208, 1211 (10th Cir. 2007) (categorical approach does not involve a subjective inquiry into the facts of the case; instead, courts seek to determine "which part of the statute was charged against the defendant and, thus, which portion of the statute to examine on its face").

Under the modified categorical approach, courts may examine certain judicial documents to see which part of multiple parts of a statute the defendant was convicted of. *Taylor*, 495 U.S. at 599, 602; *see also United States v. Zuniga-Soto*, 527 F.3d 1110, 1121 (10th Cir. 2008) (describing the categorical approach to determine whether a defendant had been convicted of a "crime of violence" under USSG § 2L1.2). Documents that a court may consider when a guilty plea is involved are the charging papers, the plea agreement and the plea hearing transcript. *Shepard v. United States*, 544 U.S. 13, 20-21 (2005). The burden is on the government to prove by reference to the proper documents that a sentence enhancement under the ACCA is appropriate. *United States v. Johnson*, 130 F.3d 1420, 1430 (10th Cir. 1997).

**B.** *To satisfy the residual clause of 18 U.S.C. § 924(e)(2)(B)(ii), the mens rea element of the offense must be purposeful, not reckless.*

The residual clause of § 924(e)(2)(B)(ii) is not a catch-all provision, but instead, "the provision's listed examples—burglary, arson, extortion or crimes involving the use of explosives—illustrate the kinds of crimes that fall within the statute's scope." *Begay*, 553 U.S. at 142. The clause covers only those "crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves." *Id.* at 143. In *Begay*, the Court observed that the listed crimes all typically involve purposeful, violent and aggressive conduct. *Id.* at 144-45. "That conduct is such that it makes more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim." *Id.* at 145. Crimes committed in a purposeful, violent and aggressive manner are "characteristic of the armed

7

career criminal, the eponym of the statute."  *Id.* (quoting the dissent in the lower court decision, *United States v. Begay*, 470 F.3d  964, 980 (10th Cir. 2006) (McConnell, J., dissenting in part)).

The *Begay* Court contrasted the purposeful nature of the enumerated offenses to the reckless nature of the New Mexico offense of driving under the influence.  The government had argued that the knowing nature of the conduct that produces intoxication combined with the inherent recklessness of the ensuing conduct amounted to an element of intent similar to the intent the enumerated offenses required.  The Court disagreed.  It conceded that "a drunk driver may very well drink on purpose, " but observed "that, unlike the example crimes, the conduct for which the drunk driver is convicted . . . need not be purposeful or deliberate." *Id.* (citing *Leocal v. Ashcroft*, 543 U.S. 1, 11 (2004)).

"This distinction matters considerably," with respect to the basic purposes of the ACCA, the Court emphasized.  *Id.* at 146.  "[C]rimes involving intentional or purposeful conduct (as in burglary and arson)" differ from driving under the influence in that, while "[i]n both instances, the offender's prior crimes reveal a degree of callousness toward risk, . . . in the former instance they also show an increased likelihood that the offender is the kind of person who might deliberately point the gun and pull the trigger.  We have no reason to believe that Congress intended a 15-year mandatory prison term where that increased likelihood does not exist."  *Id.*  The *Begay* Court went on to list other offenses, besides driving under the influence, which, though dangerous, would also not warrant treatment as

8

violent felonies under the ACCA, such as reckless polluting  and recklessly tampering with consumer products.  *Id.*

Federal courts, including the Tenth Circuit, have consistently interpreted *Begay* to require an offense to be intentional in order to qualify as a violent felony pursuant to the residual clause and thus to preclude residual clause coverage to offenses with recklessness as a mens rea.  *United States v. Armijo*, 651 F.3d 1226, 1234-37 & n. 8 (10th Cir. 2011) (citing *United States v. Ford*, 613 F.3d 1263, 1272 (10th Cir. 2010)); *United States v. McMurray*, 653 F.3d 367, 376-77 (6th Cir. 2011); *United States v. Smith*, 544 F.3d 781, 783-86 (7th Cir. 2008); *United States v. Gray*, 535 F.3d 128, 131-32 (2d Cir. 2008).

The Supreme Court in *Sykes v. United States*, 131 S. Ct. 2267 (2011), has recently confirmed that interpretation.  It noted the specific reason the *Begay* Court gave for its holding was that driving under the influence involved a crime "akin to strict liability, negligence and recklessness crimes" and therefore the crime was not purposeful or deliberate.  *Id.* at 2275, (citing *Begay*, 553 U.S. at 145), 2276.  It suggested that in many cases the purposeful, violent and aggressive inquiry "will be redundant with the inquiry into risk."  *Id.* at 2275.  The Court concluded  that, because the eluding offense it was examining was "not a strict liability, negligence or recklessness crime," risk levels provided "a categorical and manageable standard that suffice[d] to resolve the case" before it.  *Id.* at 2275-76.

The *Sykes* Court did not, as the probation office implies, (PSR ¶ 27), eliminate *Begay*'s purposefulness requirement.  Indeed, *Sykes* effectively affirmed that an offense with a recklessness element does not satisfy the prerequisites for inclusion in the residual clause. *See McMurray*, 653 F.3d at 376, n. 9 (the *Sykes* "Court indicated that the *Begay* standard remains applicable when the felony is a strict liability, negligence or recklessness crime" (citing *Sykes*, 131 S. Ct. at 2276); *see also United States v. Smith*, 652 F.3d 1244, 1248 (10th Cir. 2011) (interpreting *Sykes* to mean that where the felony at issue is not a strict liability, negligence, or recklessness crime, the proper inquiry is not whether the crime was purposeful, violent or aggressive but only whether it is similar in risk to the listed crimes); *United States v. Vann*, 660 F.3d 771, 780 (4th Cir. 2011) (en banc) (King, J., concurring) (in *Sykes*, "the essential hallmarks of *Begay* were reaffirmed").

**C.**  *Recklessness is the relevant mens rea element of Mr. Phillips' violation of N.M. Stat. Ann. § 30-3-8(B) and therefore that violation is not a violent felony under the residual clause of 18 U.S.C. § 924(e)(2)(B)(ii).*

Mr. Phillips was convicted of shooting at a motor vehicle, which did not result in great bodily harm, in violation of  N.M. Stat. Ann. § 30-3-8(B).  (Att. B).  That statute prohibits "wilfully discharging a firearm at . . . a motor vehicle with reckless disregard for the person of another."  *See also* N.M. UJI 14-342 (listing elements of the offense).  If the offense does not result in an injury or great bodily harm to another person, it is a fourth degree felony. N.M. Stat. Ann. § 30-3-8(B).  A person acts with "reckless disregard" under § 30-3-8(B) when "he knew that his conduct created a substantial and foreseeable risk, . . . he disregarded

that risk and . . . he was wholly indifferent to the consequences of his conduct and to the welfare and safety of others."  N.M. UJI 14-342, Use Note 3 (referring to N.M. UJI 14-1704 for definition of "reckless disregard"); N.M. UJI 14-1704; *State v. Dominguez*, 106 P.3d 563, 570 (N.M. 2005) (quoting N.M. UJI 14-1704).  Although no New Mexico case has defined what is meant by "at," its ordinary meaning is "'[t]o or in the direction of' or 'in, on or near.'"  *United States v. Cadena*, 2009 WL 4063735, *6 (E.D. Mich. Nov. 24, 2009) (quoting *People v. Wilson*, 585 N.W.2d 24, 26 (Mich. App. 1998) (quoting *The American Heritage Dictionary* 137 (1982); *Random House College Dictionary* 83 (1997))).

The purpose of § 30-3-8(B) is to "protect[] the public from the reckless shooting into a vehicle and possible resulting property damage and bodily injury."  *Dominguez*, 106 P.3d at 567.  Intent to injure is not an element.  *Id.* at 571.  Nor does the offense require "objective knowledge that the defendant's acts create a strong probability of death or great bodily harm," as required for second degree murder and voluntary manslaughter.  *Id.* at 570; *State v. Mireles*, 98 P.3d 727, 735 (N.M. App. 2004).  Instead, mere recklessness is sufficient.  *Dominguez*, 106 P.3d at 570*; State v. Solano*, 215 P.3d 769, 776 (N.M. App. 2009); *Mireles*, 98 P.3d at 737.  The Tenth Circuit has recognized this fact.  *See United States v. Hernandez-Valdez*, 2011 WL 5822282, * 7, n. 5 (10th Cir. Nov. 18, 2011) (unpublished) (noting that to be guilty of violating § 30-3-8(B), the defendant has to be reckless).

The recklessness that is an element of § 30-3-8(B) is a less culpable mental state than the purposefulness required to justify inclusion of an offense within the residual clause of §

11

924(e)(2)(B)(ii), as *Begay* interpreted it.   In *Armijo*, in addressing the application of the identically worded residual clause of the crime of violence definition in USSG § 4B1.2(a)(2), the Tenth Circuit held the recklessness element of Colorado's manslaughter statute did not satisfy *Begay*'s purposefulness requirement.  651 F.3d at 1234-37.  To violate that statute the defendant had to consciously disregard a substantial and unjustifiable risk that he would cause the death of another.   *Id.* at 1233.   Other circuits have found similar, or more blameworthy, recklessness to constitute insufficiently culpable scienter for application of the residual clause.  For example, in *Gray*, conduct occurring "under circumstances evincing a depraved indifference to human life, . . . which creates a grave risk of death to another person," did not cut the mustard under *Begay*.  535 F.3d at 131-32 (quoting N.Y. Penal Law § 120.25); *see also United States v. Woods*, 576 F.3d 400, 410-13 (7th Cir. 2009) (same determination where a person acts recklessly when he "*consciously disregards* a substantial and unjustifiable risk" that his "acts . . . are likely to cause death or great bodily harm to some individual" "and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation") (quoting 720 Ill. Comp. Stat. 5/4-6 & 5/9-3(a)) (emphasis in *Woods*).

       In *Begay* itself, the Court observed that the federal offense of reckless tampering with consumer products under 18 U.S.C. § 1365(a) did not have a mens rea element serious enough to justify treatment as a violent felony under the residual clause.  553 U.S. at 146.  That statute forbids tampering with consumer products "with reckless disregard for the risk

12

that another person will be placed in danger of death or bodily injury and under circumstances manifesting extreme indifference to such risk." 18 U.S.C. § 1365(a).

It is clear then that the recklessness mens rea required to violate N.M. Stat. Ann. § 30-3-8(B)—"[knowing] that his conduct created a substantial and foreseeable risk, . . . disregard[ing] that risk and . . . [being] wholly indifferent to the consequences of his conduct and to the welfare and safety of others," *see* N.M. UJI 14-1704—does not pass muster under the *Begay* purposefulness standard. Violation of § 30-3-8(B) is therefore not a violent felony under the residual clause of § 924(e)(2)(B)(ii).

**D.** *That a violator of N.M. Stat. Ann. § 30-3-8(B) commits some acts purposefully does not make the offense a violent felony under the residual clause of 18 U.S.C. § 924(e)(2)(B)(ii).*

In attempting to justify the inclusion of Mr. Phillips' violation of § 30-3-8(B) in the residual clause of § 924(e)(2)(B)(ii), the probation office points out that the act of shooting at a motor vehicle under § 30-3-8(B) must be willful. (PSR ¶ 27). But the mens rea associated with the risky portion of the offense is what matters under *Begay*. It is not enough that an offender commits some acts intentionally. Otherwise, since every risky felony offense requires some purposeful act of some sort, every risky felony offense would satisfy the residual clause. *Begay* explicitly rejected that notion. 553 U.S. at 143 (enumerated offenses limit the residual clause "to crimes that are roughly similar, in kind as well as in degree of risks posed, to the examples themselves").

The *Begay* Court itself made the distinction between intent regarding certain acts and intent with respect to the consequences of those acts.  It spurned the government's suggestion that a driving-under-the-influence offender possesses the requisite mental state because the offender knowingly gets intoxicated.  The Court acknowledged "a drunk driver may very well drink on purpose," but, unlike the crimes enumerated in § 924(e)(2)(B)(ii), "the conduct for which the drunk driver is convicted (driving under the influence) need not be purposeful or deliberate."  553 U.S. at 145.

Circuit courts have followed the *Begay* Court's example in distinguishing the purposefulness of certain acts from recklessness with respect to the consequences of those acts.  For example, in *Woods*, the Seventh Circuit held Illinois involuntary manslaughter was not purposeful under *Begay*—a holding the Tenth Circuit recognized it was following in *Armijo*, 651 F.3d at 237, n. 13.  The Seventh Circuit rejected the government's argument that the offense was purposeful on the grounds that in order to commit it the defendant had to intend the acts which created dangerous circumstances.  *Woods*, 576 F.3d at 410-11.  The court noted that every crime of recklessness necessarily requires a purposeful, volitional act that sets in motion the dangerous outcome.  Indeed, when the court pressed the government at oral argument to come up with an example of a situation where a defendant would be reckless as to the outcome and not begin with an intentional act, the government could not provide one.  *Id.* at 411. The court found the manslaughter offender need only be reckless with respect to the consequences of the intentional acts and therefore the offense was not

14

purposeful in a way relevant to the purposes of the ACCA, just as the drunk driver defendant in *Begay* did not act purposefully under § 924(e)(2)(B)(ii), where he intended to drink and drive but was reckless as to the consequences of that conduct. *Woods*, 576 F.3d at 410-11.

Similarly, in *United States v. Holloway*, 630 F.3d 252 (1st Cir. 2011), the First Circuit held Massachusetts reckless battery, which involves conduct with a high degree of likelihood that substantial harm will result to another, or disregard of a probable harmful consequences to another, and a resulting physical injury, was not sufficiently comparable with respect to the requisite mental state to the enumerated offenses of § 924(e)(2)(B)(ii). *Id.* at 261-62. The court rejected the government's contention that the element of intentional commission of a wanton and reckless act satisfied *Begay*'s purposeful requirement. The court responded that, while the defendant "may very well have purposefully or deliberately committed certain acts, the act for which he was convicted . . . needed to be neither purposeful nor deliberate for conviction." *Id.*.

Other circuit courts have reached a similar conclusion. S*ee Covarrubias Teposte v. Holder*, 632 F.3d 1049, 1052-56 (9th Cir. 2011) (California offense of shooting at an inhabited dwelling or vehicle does not involve "a substantial risk that physical force against the person or property of another may be used" under 18 U.S.C. § 16(b) because, while an offender maliciously and willfully discharges a firearm, he needs only to consciously disregard the probability that a bullet will strike the target or persons in or around it); *United States v. Peterson*, 629 F.3d 432, 439-40 (4th Cir. 2011) (North Carolina involuntary

15

manslaughter does not meet the *Begay* standard even though it is set in motion by purposeful conduct because the mens rea of the offense ultimately need not be purposeful or deliberate); *United States v. Harris*, 608 F.3d 1222, 1230-33 (11th Cir. 2010) (Florida sexual battery of a child under sixteen is not purposeful under *Begay* because, while it involves the deliberate and affirmative conduct of sexual contact with a minor, strict liability applied to the age of the victim); *United States v. Coronado*, 603 F.3d 706, 708-12 (9th Cir. 2010) (California conviction for discharging a firearm in a grossly negligent manner does not satisfy *Begay* because, while it involves an intentional act of discharging a firearm, it does not require an intent to harm or that the act be directed toward another person); *United States v. McDonald*, 592 F.3d 808, 813-15 (7th Cir. 2010) (like *Harris*); *Tran v. Gonzales*, 414 F.3d 464, 472-73 (3d Cir. 2005) (intentionally starting a fire that recklessly endangered the property of another is not a crime of violence under 18 U.S.C. § 16(b) because it does not involve an intentional use of force against property).

So also in this case, § 30-3-8(B) has as an element the willful shooting at a vehicle, but the conduct it condemns need not be purposeful or intentional. It need only be reckless. A violation of § 30-3-8(B) is therefore not a violent felony under *Begay*'s interpretation of the residual clause of § 924(e)(2)(B)(ii).

The probation office determined a § 30-3-8(B) violation creates as much risk of physical injury to another as does burglary or arson on the ground that discharging a firearm "in a public place" may cause a bullet to "stray and potentially hit someone." (PSR ¶ 27).

16

This analysis relies on the notion that the offense is committed in a public place where people might be hit by a stray bullet.  Thus, the probation office's risk assessment depends on the part of § 30-3-8(B) regarding which the offender may only be reckless.  Shooting at a motor vehicle in itself is not dangerous to others until the circumstances of reckless disregard for the person of another is added.  By contrast, the commission of generic burglary—"unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime," *Taylor*, 495 U.S. at 598—or generic arson—"malicious burning of real or personal property of another," *United States v. Whaley*, 552 F.3d 904, 907 (8th Cir. 2009)—presents the substantial risk of confrontation with an innocent third party attempting to protect the invaded property, *see Taylor*, 495 U.S. at 588 (noting the confrontation risks of burglary).  Arson also presents the substantial risk of a conflagration reaching people within or near the property.

Consequently, a violation of § 30-3-8(B) is not similar in degree of risk to any of the enumerated offenses of § 924(e)(2)(B)(ii), *see Begay*, 553 U.S. at 143 (residual clause covers only crimes similar in degree of risk to the listed offenses), absent the  recklessness aspect of § 30-3-8(B).  *Cf. United States v. Williams*, 537 F.3d 969, 974 (8th Cir. 2008) (potential for confrontation is present "to a far lesser extent" during a motor vehicle theft than during a generic burglary); *United States v. Charles*, 301 F.3d 309, 312-14 (5th Cir. 2002) (en banc) (similar conclusion); *United States v. Headspeth*, 852 F.2d 753, 758-59 (4th Cir. 1988) (similar conclusion with respect to storehouse breaking because it generally involves

unoccupied buildings); *United States v. Lewis*, 2009 WL 1396809, ** 8-9 (3rd Cir. May 20, 2009) (unpublished) (similar conclusion with respect to the Ohio offense of burglary of a structure when an occupant is not likely to be present; "[a]bsent the likely presence of another, we hold that the risk of physical injury is too diminished to satisfy ACCA's residual clause"). As discussed above, recklessness is not a sufficiently culpable mens rea to justify the inclusion of an offense within the residual clause.

The Tenth Circuit's decision in *United States v. Ford*, 613 F.3d 1263 (10th Cir. 2010), does not require a holding contrary to Mr. Phillips' position. In that case, the Tenth Circuit found that a violation of a Kansas' statute prohibiting "malicious, intentional and unauthorized discharge of a firearm at . . . an occupied building or vehicle," Kan. Stat. Ann. § 21-4219(b), was sufficiently purposeful under *Begay* to qualify as a violent felony under the residual clause of § 924(e)(2)(B)(ii). *Id.* at 1272. There are at least three reasons why *Ford* does not preclude a different conclusion with respect to N.M. Stat. Ann. § 30-3-8(B).

First, as the government pointed out in its brief before the Tenth Circuit in *Ford*, Government's Answer Brief at 28 & n. 13, *Ford*, 10th Cir. No. 09-2244, § 21-4219(b) has no recklessness mens rea. That provision does not mention recklessness and Kan. Stat. Ann. § 21-3201(a) provides that "proof of intentional conduct shall be required to establish criminal intent, unless the statute defining the crime expressly provides that the prohibited act is criminal if done in a reckless manner." *See State v. Plakio*, 2004 WL 2384232, * 5 (Kan. App. 2004) ("[t]here is no reckless element present" in the offense of discharging a

firearm at an occupied dwelling in violation of Kan. Stat. Ann. § 21-4219(b)).  Second, § 21-4219(b) requires that the vehicle be occupied.  Section 30-3-8(B) has no such element, which obviously significantly adds to the dangerousness of the offense, as the Tenth Circuit pointed out, *Ford*, 613 F.3d at 1272.

Third, the Tenth Circuit explicitly refused to consider arguments the defendant raised for the first time in his reply brief.  *Id.*, n. 2.  Mr. Ford failed to argue his violation of § 21-4219(b) was not purposeful under *Begay* until his reply brief.  Defendant-Appellant's Opening Brief at 32-37; Defendant-Appellant's Reply Brief at 17-19, *Ford*, 10th Cir. No. 09-2244.  A case has precedential value only with respect to issues that are actually decided. *United States v. Romero*, 491 F.3d 1173, 1177 (10th Cir. 2007).  "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedent."  *Id.* (quotations and citations omitted).  If a court does not address a certain issue of law in a particular case, the decision in that case does not constitute precedent with respect to that issue.  *United Food & Commercial Workers Union, Local 1564 of New Mexico v. Albertson's, Inc.*, 207 F.3d 1193, 1199 (10th Cir. 2000).

*United States v. Booker*, 543 U.S. 220 (2005), illustrates this point.  In that case, the Court held that imposing a sentence above the maximum sentence permissible under a mandatory sentencing guideline system based on judicial findings of fact violated the Sixth Amendment.  *Id.* at 230-37.  The Court held stare decisis did not require a different

conclusion, even though in a number of previous decisions it had let stand sentences that contravened its current ruling.  The Court explained that the defendants in the prior cases had not made the argument that carried the day in the instant case.  *Id.* at 239-41.  So, in *Ford*, the Tenth Circuit did not really face the type of nuanced purposefulness argument Mr. Phillips raises in this case.

For all of the above reasons, *Ford* does not stand in the way of the logical conclusion that flows from *Begay* and a careful examination of § 30-3-8(B).  A violation of § 30-3-8(B) does not have the purposeful element required to warrant the offense's coverage by the residual clause of § 924(e)(2)(ii).  *See Covarrubias Teposte*, 632 F.3d at 1052-56 (California offense of shooting at an inhabited dwelling or vehicle does not involve "a substantial risk that physical force against the person or property of another may be used" under 18 U.S.C. § 16(b) because, while an offender must maliciously and willfully discharge a firearm, he needs only to consciously disregard the probability that a bullet will strike the target or persons in or around it); *Coronado*, 603 F.3d at 708-12 (California conviction for discharging a firearm in a grossly negligent manner does not satisfy *Begay* because it does not require an intent to harm or that the act be directed toward another person); *United States v. Narvaez-Gomez*, 489 F.3d 970, 976-77 (9th Cir. 2007) (discharging a firearm in such close proximity to the target that the defendant shows a conscious indifference to the probable consequence that one or more projectiles will strike the target has an intent element of recklessness and therefore does not constitute an intentional use of force so as to warrant a crime-of-violence

20

enhancement under USSG § 2L1.2); *United States v. Dixon*, 2008 WL 410705, ** 2-3 (5th Cir. Feb. 15, 2008) (unpublished) (knowing discharge of a firearm at or in the direction of a habitation, building, or vehicle, with reckless disregard as to whether the habitation, building, or vehicle is occupied is not a crime of violence under USSG § 4B1.2(a)); *see also United States v. Foster*, 577 F.3d 813, 815-16 (7th Cir. 2009) (there is a strong argument (which the defendant did not make) that the defendant's shooting a gun in the air with others nearby in violation of Indiana's criminal recklessness statute was not a violent felony).

The conduct encompassed by the offense does not "make[] more likely that [the] offender, later possessing a gun, will use that gun *deliberately* to harm a victim." *See Begay*, 553 U.S. at 145 (emphasis added).  Mr. Phillips' § 30-3-8(B) conviction is therefore not for a violent felony under the ACCA.

**E.** *The rule of lenity favors a holding that the ACCA does not apply to § 30-3-8(B) convictions.*

The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the accused.  *United States v. Santos*, 553 U.S. 507, 514 (2008) (plurality opinion) (Scalia, J.). Courts "will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation is based on no more than a guess as to what Congress intended."  *Ladner v. United States*, 358 U.S. 169, 178 (1958).  "This venerable rule not only vindicates the fundamental principle that no citizen should be . . . subjected to punishment that is not clearly prescribed.  It also places the weight of inertia upon the party that can best induce Congress to speak more clearly and keeps courts from making criminal

law in Congress's stead." *Santos*, 553 U.S. at 514.  The rule of lenity applies to penalty provisions. *Bifulco v. United States*, 447 U.S. 381, 387 (1980).  Here, if there is ambiguity as to the application of the ACCA to a violation of § 30-3-8(B), the rule of lenity dictates a holding that the ACCA does not apply.  *See United States v. Concha*, 233 F.3d 1249, 1256 (10th Cir. 2000) (rule of lenity warranted the conclusion that foreign convictions may not be used as predicate offenses under the ACCA).

**F.** *The ACCA does not apply to Mr. Phillips.*

The probation office only lists two other convictions of Mr. Phillips as predicate convictions under the ACCA.  (PSR ¶ 27).  Three convictions for violent felonies and/or serious drug offenses are required to trigger application of the ACCA.  18 U.S.C. § 924(e)(1).  Since Mr. Phillips' conviction for a violation of § 30-2-8(B) is not a violent felony, the ACCA does not apply to Mr. Phillips.

**II.  Mr. Phillips' aggravated assault conviction is not for a violent felony under the ACCA or a crime of violence under USSG § 4B1.2(a) because it does not have as an element the intentional use, attempted use, or threatened use of physical force against the person of another.**

**A.** *18 U.S.C. § 924(e)(2)(B)(i) requires the threatened use of physical force to be intentional, not reckless.*

"As suggested by its title, the Armed Career Criminal Act focuses upon the special danger created when a particular type of offender—a violent criminal or drug trafficker—possesses a gun." *Begay*, 553 U.S. at 146.  As discussed under Point I, for that reason, Congress intended the ACCA to encompass those offenders convicted of crimes

involving "intentional or purposeful conduct," rather than those offenders who simply behave recklessly. *Id.*; *see also Smith*, 544 F.3d at 785 (interpreting *Begay*). When an offender has intentionally and purposely engaged in violent conduct in the past there is "an increased likelihood that the offender is the kind of person who might deliberately point the gun and pull the trigger." *Begay*, 553 U.S. at 146. Congress did not "intend[] a 15-year mandatory prison term where that increased likelihood does not exist." *Id.* The ACCA's provisions must be read in that light. *Id.* at 146-47.

Under the ACCA, a felony is a predicate "violent felony' if it "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). Given the above-stated purpose of the ACCA, the use of physical force must be intentional. *See Smith*, 544 F.3d at 784-87 (an offense that requires a mens rea of recklessness does not qualify as a violent felony under the residual clause of § 924(e)(2)(B)(ii)).

The Supreme Court's decision in *Leocal* supports this point. In that case, the Court interpreted language in 18 U.S.C. § 16 defining a "crime of violence" that is identical to the language of § 924(e)(2)(B)(i). The Court determined that "use . . . of physical force" means an active employment of physical force involving "a higher degree of intent than negligent or merely accidental conduct." 543 U.S. at 9. Consequently, the Court held driving under the influence did not qualify as a "crime of violence" because it did not have as an element any intent to use force. *Id.* at 9-10.

A number of circuit courts, including the Tenth Circuit, have held that the "use . . . of physical force" in the "crime of violence" definitions of 18 U.S.C. § 16(a) and USSG § 2L1.2, comment. (n. 1(B)(iii)), which are identical to § 924(e)(2)(B)(i), must be intentional, not just reckless.  *See Zuniga-Soto*, 527 F.3d at 1123 (10th Cir.) (regarding § 2L1.2); *United States v. Palomino Garcia*, 606 F.3d 1317, 1334-36 (11th Cir. 2010) (listing cases); *United States v. Torres-Villalobos*, 487 F.3d 607, 615-16 (8th Cir. 2007) (listing cases).  In *Oyebanji v. Gonzales*, 418 F.3d 260 (3rd Cir. 2005), in an opinion by then-Judge Alito, the Third Circuit stated that it could not "overlook the Court's repeated statement [in *Leocal*] that 'accidental' conduct (which would seem to include reckless conduct) is not enough to qualify as a crime of violence."  *Id.* at 264.  The court therefore concluded that a conviction for vehicular homicide, which only required proof of reckless conduct, was not a crime of violence under § 16.  *Id.* at 265.

It is apparent then that the use of physical force in § 924(e)(2)(B)(i) must be intentional, not reckless or any otehr less culpable mens rea.  *See Johnson*, 130 S. Ct. 1265, 1271 (2010) (applying the reasoning of *Leocal*'s interpretation of § 16 to an interpretation of § 924(e)(2)(B)(i)).  It consequently stands to reason that the language "threatened use of physical force" that is within the very same segment of § 924(e)(2)(B)(i) "likewise requires an *intentional* threat—that is, conduct performed with an intent to induce fear of a battery or to commit a battery."  *Silva*, 608 F.3d at 676 (Hartz, J. dissenting) (emphasis in original).  "It would be passing strange to say that the term *violent felony* encompasses the application of

24

physical force only if the offender *intends* to apply force, but it encompasses acts inducing fear of the application of physical force even when there is no intent to injure or frighten." *Id.* (emphasis in original).

Moreover, the term "threatened use" itself implies intent on the part of the threatener. *United States v. Vargas-Duran*, 356 F.3d 598, 603 (5th Cir. 2004). The primary definition of "threat" in *Black's Law Dictionary* (8th ed. 2004) is a "communicated intent to inflict harm or loss on another." Furthermore, the ACCA's focus on the special danger of an offender who would deliberately point a gun at someone and pull the trigger, *see Begay*, 553 U.S. at 146, militates against applying the ACCA's severe sanctions based on a prior crime in which the offender did not intend to create fear. Thus, an offense does not have as an element a "threatened use of physical force" under § 924(e)(2)(B)(i), unless it requires an intent to threaten or frighten. At the very least, the threatened use of physical force must be intentional, not reckless. All of the above intentionality principles apply with equal force with respect to the identical phrase in USSG § 4B1.2(a)(1). *See*, e.g., *Armijo*, 651 F.3d at 1234-35 & n. 8.

**B.** *A version of aggravated assault with a deadly weapon under New Mexico law does not satisfy the threatened-use-of-physical-force requirement of 18 U.S.C. § 924(e)(2)(B)(i).*

Mr. Phillips was convicted of aggravated assault with a deadly weapon in violation of N.M. Stat. Ann. § 30-3-2(A). (Att. A). There are essentially two different ways in which that offense can be committed. One way is by attempting battery. NMRA, Crim. UJI 14-304. The other is by engaging in conduct with a deadly weapon that causes the victim to

25

believe he or she was about to receive a battery.  *State v. Bachicha*, 808 P.2d 51, 54 (N.M.

App. 1991); NMRA, Crim. UJI 14-305; *see also* N.M. Stat. Ann. § 30-3-1(A) & (B) (setting

out two different ways assault can be committed: by attempted battery and by apprehension

causing conduct).

The state's uniform jury instructions, which must be followed, *see Jackson v. State*,

672 P.2d 660, 662 (N.M. 1983), set out the elements of the latter version of aggravated

assault with a deadly weapon.  The instructions provide that the court must first describe the

conduct the defendant engaged in.  That can be an unlawful act, a threat or menacing

conduct.  The remaining relevant elements are:

> 2. The defendant's conduct caused [the victim] to believe the
> defendant was about to intrude on [the victim's] bodily integrity
> or personal safety by touching or applying force to [the victim]
> in a rude, insolent or angry manner;
>
> 3. A reasonable person in the same circumstances as [the victim]
> would have had the same belief;
>
> 4. The defendant used a deadly weapon.

NMRA, Crim. UJI 14-305 (footnotes omitted).

The general criminal intent uniform jury instruction would also apply.  *See Bachicha*,

808 P.2d at 54.  That instruction provides:

> In addition to the other elements of [aggravated assault with a
> deadly weapon] the state must prove to your satisfaction beyond
> a reasonable doubt that the defendant acted intentionally when
> he committed the crime.  A person acts intentionally when he
> purposely does an act which the law declares to be a crime [,
> even though he may not know that his act is unlawful]. . . .

NMRA, Crim. UJI 14-141.

These instructions require a finding that the defendant intentionally engaged in conduct that caused the victim to fear an immediate battery.  But they do not have as an element an intent to assault, injure or frighten.  *State v. Manus*, 597 P.2d 280, 284 (N.M. 1979), *overruled on other grounds by*, *Sells v. State*, 653 P.2d 162, 164 (N.M. 1982); *State v. Morales*, 45 P.3d 406, 414-15 (N.M. App. 2002).  Nor do they require the defendant to know that his conduct caused the victim to believe the victim was about to receive a battery.  General criminal intent in New Mexico refers solely to the defendant's bodily movements and not to any awareness of, or intent with respect to, the consequences of those movements.  *State v. Gonzalez*, 107 P.3d 547, 553 (N.M. App. 2005).  Thus, a defendant need not have any intent with respect to the perceived threat he has raised in the mind of the victim.  Consequently, apprehension-causing aggravated assault in New Mexico does not have as an element the intentional use, attempted use or threatened use of physical force.  It therefore does not qualify as a violent felony under § 924(e)(2)(B)(i) or a crime of violence under § 4B1.2(a)(1).

**C.** *The government cannot prove Mr. Phillips was convicted of an aggravated assault that has an element the use, attempted use or threatened use of physical force.*

To prove Mr. Phillips was convicted of an offense that had the requisite element under § 924(e)(2)(B)(i) and § 4B1.2(a)(1), the government may only use certain judicial documents, such as the indictment and the plea agreement.  *Shepard*, 544 U.S. at 20-21.  As noted under

Point I, only the elements matter, the specific conduct of the defendant does not.  *See James*, 550 U.S. at 202; *Hays*, 526 F.3d at 676.

The indictment in Mr. Phillips' aggravated assault case merely repeated the words of the relevant statute that he "did assault or strike at Joshua [D.], with a handgun, which was a deadly weapon."  (Att. A).  As discussed above, "assault" can mean either of at least two different things: attempted battery or apprehension-causing conduct. N.M. Stat. Ann. § 30-3-1(A) & (B).  As noted above, the uniform jury instructions provide for two different versions of aggravated assault.  The government cannot prove which version applies to Mr. Phillips.

When the government cannot prove which variation of a statute a defendant was convicted of, the government must prove that all variations are qualifying predicate offenses. *United States v. Barraza-Ramos*, 550 F.3d 1246, 1250 (10th Cir. 2008).  As Mr. Phillips demonstrated above, the government cannot do that with respect to apprehension-causing assault.  Therefore, the government cannot use Mr. Phillips' aggravated assault conviction as a basis for an enhancement under § 924(e)(2)(B)(i) or § 4B1.2(a)(1).

**D.** *The Tenth Circuit has ruled contrary to Mr. Phillips' position.*

In *Silva*, over the vigorous dissent of Judge Hartz, the Tenth Circuit held that New Mexico's apprehension-causing aggravated assault offense does have sufficient intentionality so as to have as an element the threatened use of physical force.  The Tenth Circuit found that New Mexico's general criminal intent was enough intent, even though it acknowledged New Mexico law did not require an intent to cause fear.  608 F.3d at 670-74.  For the reasons

28

stated above, the Tenth Circuit erred when it reached that conclusion.  Mr. Phillips raises this

issue to preserve it for possible Tenth Circuit en banc and Supreme Court review.

**E.** *New Mexico apprehension-causing aggravated assault is not purposeful so as to warrant application of the residual clause of § 924(e)(2)(B)(ii) or § 4B1.2(a)(2).*

New Mexico apprehension-causing aggravated assault also does not satisfy the

requirements for inclusion within the residual clause of § 924(e)(2)(B)(ii) or § 4B1.2(a)(2).

It is not purposeful, as *Begay* requires, for the same reasons it does not have as an element

intentional threatened use of physical force.  There is no purposefulness directed at the

causing of apprehension.  An apprehension-causing defendant does not act purposefully

because he does not intend the consequences of his acts.  *See Herrick*, 545 F.3d at 58-60

(vehicular homicide is not purposeful under *Begay*); *Gray*, 535 F.3d at 131-32 (reckless

endangerment is not purposeful under *Begay*).

**F.** *New Mexico apprehension-causing aggravated assault is not "aggravated assault" under § 4B1.2's definition of crime of violence.*

Application note 1 of USSG § 4B1.2 defines crimes of violence not only in terms of

the use-of-physical-force clause and the residual clause, but it also designates "aggravated

assault" as a crime of violence.  The elements of state offenses determine whether a prior

offense is a crime of violence under § 4B1.2, not labels under state law.  *United States v.*

*Mohr*, 554 F.3d 604, 610 (5th Cir. 2009) (citing *Taylor*, 495 U.S. at 590).  The least culpable

mens rea element of the generic meaning of "aggravated assault" is extreme indifference to

the value of human life.  *United States v. Esparza-Herrera*, 557 F.3d 1019, 1022-25 (9th Cir.

2009).  As demonstrated above, apprehension-causing aggravated assault in New Mexico requires a much less culpable mens rea.  Indeed, the offender need not have any mens rea with respect to causing apprehension in others.  Therefore, Mr. Phillips' conviction for aggravated assault is not for "aggravated assault" under § 4B1.2, comment. (n. 1).  *See esparza-Herrera*, 557 F.3d at 1024-25 (Arizona's aggravated assault was not "aggravated assault" under the crime of violence definition in USSG § 2L1.2, comment. (1(B)(iii))).

**G.** *No enhancement is warranted based on Mr. Phillips' aggravated assault conviction.*

For the reasons stated above, the government cannot meet its burden to prove Mr. Phillips' aggravated assault offense was a violent felony under either prong of § 924(e)(2)(B) or a crime of violence under any provision of § 4B1.2(a).  Since the probation office has proffered only three convictions, including Mr. Phillips' aggravated assault conviction, as predicate convictions for application of the ACCA, (PSR ¶ 27), the ACCA does not apply to Mr. Phillips.  *See* 18 U.S.C. § 924(e)(1) (requiring three convictions for violent felonies or serious drug offenses to trigger application of the ACCA penalties).  Since the probation office has proffered only two convictions, including Mr. Phillips' aggravated assault conviction, as predicate convictions to warrant an enhancement to base offense level twenty-four under USSG § 2K2.1(a)(2), (PSR ¶ 21), that enhancement, which requires two convictions for crimes of violence, does not apply to Mr. Phillips.

## CONCLUSION

For the reasons stated above, defendant Nicholous Phillips requests that this court reject the presentence report findings to which he objects, hold that he is not subject to the Armed Career Criminal Act and refuse to impose an enhancement pursuant to USSG § 2K2.1(a)(2) and for any other relief this court deems appropriate.

I HEREBY CERTIFY THAT on the
3rd day of January, 2012, I filed
the foregoing electronically through the
CM/ECF system, which caused AUSA
Norman Cairns, to be served
by electronic means, as more fully
reflected on the Notice of Electronic Filing.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
111 Lomas NW, Suite 501
Albuquerque, NM 87102
(505) 346-2489


_____*filed electronically*_____
Thomas B. Jameson, AFPD
Attorney for Defendant


_____*filed electronically*_____

31